IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BENJAMIN THONG,

    Plaintiff,

vs.                                                                               No.CIV 96-1634 WWD

REGENTS OF THE UNIVERSITY
OF NEW MEXICO and
UNIVERSITY OF NEW MEXICO,

    Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER comes before this Court following a non-jury trial held January 21-22, 1998. Parties have filed proposed findings and closing arguments. Having reviewed the evidence, legal arguments and applicable case law, I find that judgment should entered for the defendants.

## Background

Benjamin Thong, who is Vietnamese, alleges that defendants terminated his employment because of his national origin, in violation of 42 § U.S.C.A. 2000e to 2000e-17 of the Civil Rights Act of 1964, § 701 et seq. (Title VII). In August of 1988, Dr. Thong was hired as a lecturer at the Adult Basic Education ("ABE") division of the Gallup branch of the University of New Mexico to teach basic college preparatory skills. His contract was renewable annually and his position was non-tenured. Plaintiff claims that he worked for defendants for five years without significant problems, but that in the fall of 1993, his supervisors, Nick Evangelista and Max Perez began "nit-picking" his work and attendance. He also claims that they harassed him with derogatory comments about his Vietnamese origin. Specifically, Dr. Thong says that his

supervisors referred to him as "Vietcong"; created an imaginary line through the center of his office and told him it was a "DMZ" which shouldn't be crossed; and displayed on his desk "anti-Vietnamese magazines" opened to "provocative" scenes.

Defendants base the decision not to renew his contract on plaintiff's tardiness, absenteeism and failure to adequately perform his duties as a lecturer.  They contend that his subsequent termination was a result of Dr. Thong's failure to respond to or correct these deficiencies, particularly his failure to turn in final student grades.

### Findings of Fact

1.  Nick Evangelista was plaintiff's supervisor until April 1993, when Max Perez became his immediate supervisor as department chairman until plaintiff was terminated.  Mr. Evangelista continued as Mr. Perez' immediate supervisor.

2.  Dr. Thong was absent from his job for orientation week and the first week of classes for the fall semester of 1993.  He also missed a scheduling meeting which was held during this time.  His absence was without permission or foreknowledge by his supervisor or superiors.  Exs. 12, M, N.[1]

3.  Students in an algebra course had registered complaints about plaintiff's teaching in December 1992 and February 1993.  They complained that he was difficult to understand and that they relied on Randy Larry, an "alternate instructor," to be able to satisfactorily complete the course.  Ex. 9.

---

[1] Plaintiff's exhibits are denoted by number, and defendants' by letter.

4.  Plaintiff was frequently tardy for his classes. Exs. 10, 12, 13, 14. Mr. Perez warned plaintiff several times about arriving late for classes. Exs. 12, 13, 14.[2] Other problems, including plaintiff's tardiness, availability to students and carrying out assigned work schedules, were also brought to the attention of Dr. Phillips as well as Kathy Meech in the personnel department.

5.  On October 11, 1993, a meeting was held with Dr. Thong, Mr. Perez, Dr. Phillips, Dr. de Bruin, and Kathy Meech.[3] At the meeting, general scheduling issues and policies regarding tardiness and absenteeism were discussed as well as issues specific to plaintiff, such as student complaints and student files not being kept current. Plaintiff was on notice that his contract would not be renewed if he did not improve.

6. Dr. Phillips told Mr. Perez to keep a running log to document plaintiff's job performance and any related problems. Plaintiff's job performance did not improve. Ex. 10, 11. By December 6, 1993, Mr. Perez recommended to Dr. Phillips that plaintiff's contract not be renewed. Ex. BB.

7.  It is not conclusive whether plaintiff's allegations of harassment occurred. Plaintiff's testimony reveals that these allegations involve only Mr. Evangelista and not Mr. Perez, who initiated the recommendation of non-renewal.[4]

---

[2] I make no findings on whether plaintiff actually received Exs. 12 and 13, which he claims he did not. However, he was present at the October 11th meeting where this issue was brought up.

[3] Dr. John Phillips served as Campus Director at Gallup. Dr. de Bruin was the Associate Director of Instruction at the time.

[4] Although plaintiff stated that Mr. Perez was sometimes in the same area, Mr. Perez denied ever hearing these comments made, nor any other discriminatory comments toward Dr. Thong. The magazine "Viet Nam," which plaintiff stated he found on his desk open to war scenes, was not a publication subscribed to by the department. However, plaintiff said that he did

8. Dr. Phillips met with Dr. Thong on December 7, 1998, during which Dr. Phillips acknowledged the existence of some "friction" within the ABE department and complaints about plaintiff concerning records, paperwork and not working enough with the students. Exs. 21a at 5; 24 at 3. The gist of the meeting was an attempt by Dr. Phillips to try to resolve the problems raised at the October meeting. He offered to write letters of recommendation and guidance in helping plaintiff find another job if he chose to resign instead of getting notification that his contract would not be renewed.

9. The following day, Dr. Phillips met with plaintiff again, this time to inform plaintiff that he had made a decision not to renew his contract. I find no evidence that Dr. Phillips told plaintiff that he would be better off out west in California where there would be more Asians.[5]

10. Plaintiff did not resign. Dr. Phillips handed plaintiff the notice of non-renewal on December 14, 1998. Ex. 27.

11. Dr. Thong did not turn in grades for five classes by the December 10th deadline. Students were asking about their grades for his classes and administration was concerned. Mr. Perez sent a memo to plaintiff asking him to pick up his grade sheet so that it could be filled out and grades could be turned in. Ex. LL, MM.[6]

---

buy the magazine himself on occasion.

[5] Plaintiff tape recorded the December 7th and 8th meetings without Dr. Phillips's knowledge. The recording is unclear and the unofficial transcript made from the tapes is incomplete but generally accurate as to the substance of what was said. Plaintiff claims that the recorder did not pick up Dr. Phillips' comment about California. I refrain from filling in blanks on the tape with content, instead relying on the available testimony and evidence.

[6] By this time, the ABE department had instituted a policy where instructors were supposed to turn in copies of grade books which were kept in a central file. Grade sheets were completed based on information in the grade books. Plaintiff contends that he could not complete

12. By December 21, 1998, plaintiff had still not turned in the grades. Dr. Phillips warned plaintiff in a certified letter that failure to do so, when considered along with his other job deficiencies, would result in drastic disciplinary action. Exs. 33, 34. Plaintiff was also notified that his pay was being withheld until he fulfilled this obligation. Ex. RR. Efforts by Dr. Phillips and Dr. Mary Coleman, who was the Provost and Vice President for Academic Affairs, to contact plaintiff by phone failed. Exs. BBB, 33.[7]

13. Students in the classes for which grades were not turned in were assigned a "Credit / No Credit" grade, even though at that time, the department's policy was to assign letter grades.

14. Dr. Phillips sent plaintiff a certified letter on December 23, 1998 which notified Dr. Thong of his termination effective January 15, 1994.

15. Plaintiff never reported any discriminatory conduct to any university official. In a letter dated December 10, 1998 in which he appealed his non-renewal to Dr. Coleman, he did state that he felt there was prejudice against him because he was Southeast Asian and alleged that the Gallup branch practiced nepotism. Ex. 26. Dr. Coleman responded by citing the reasons on which his non-renewal was based as well as his failure to turn in final grades resulting in his termination, and ultimately declined to overturn the decision. Ex. BBB.

## Conclusions of Law

Legal Standard

---

the grade sheets because Mr. Perez had not returned his grade book. However, at trial, Mr. Perez denied ever having received plaintiff's grade book and there is no evidence which supports finding otherwise.

[7] According to a copy of plaintiff's phone bill, he did make one call on December 17th and several on December 21 to a general number for Dr. Coleman's office. Ex. 63. However, parties do not dispute that no contact was made.

16. To establish a *prima facie* case of discrimination under Title VII, an employee must show that he (1) belongs to a protected class; (2) that he was qualified for his job; (3) that, despite his qualifications, he was discharged; and (4) that after his discharge the job remained available.[8] Lujan v. NM Health & Social Serv. Dept., 624 F.2d 968, 970 (10th Cir. 1980). Once a *prima facie* case is established, the employer must articulate some legitimate, nondiscriminatory reason for termination. Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 at 253-54 (1981); Randle, 69 F.3d at 451. After a sufficient reason is presented by the employer, the employee must then prove that the justification was merely a pretext for discrimination. Burdine, 450 U.S. at 253; Randle, 69 F.3d at 451.

Applying the Legal Standard to the Facts

17. At the trial, in denying defendant's motion for judgment as a matter of law, I ruled that plaintiff did establish a prima facie case.[9] The evidence and testimony clearly demonstrate that plaintiff was qualified for the position for which he was hired. In fact, Dr. Phillips mentioned this fact to plaintiff several times during the December 7th meeting. Ex. 21 at 2. Yet, despite his qualifications, plaintiff was discharged.

18. Defendants did not renew plaintiff's contract because of absenteeism, tardiness, and failure to perform work with students. Plaintiff was subsequently terminated for failing to

---

[8] In this case, the last prong does not apply. See Tomsic v. State Farm, 85 F.3d 1472 (1996) (test should be flexible when one of the prongs not applicable); accord, Randle v. City of Aurora, 69 F.3d 441, 451 n.13. (10th Cir. 1995).

[9] Defendants erroneously relied on the existence of legitimate reasons for plaintiff's termination as a basis for arguing that plaintiff had not shown a *prima facie* case. However, the Tenth Circuit has made clear that employer's reasons are not to be considered in the analysis. Purrington v. Univ. of Utah, 996 F.2d 1025, 1033 (10th Cir. 1993) (citing Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1469 (10th Cir. 1992).

complete his obligations as an instructor, viz., turning in final grades for his classes.  Defendants have met their burden of presenting legitimate, non-discriminatory reasons for the decisions both not to renew plaintiff's contract and to terminate him.

19.  The evidence is inconclusive as to whether the alleged discriminatory comments were made (referring to plaintiff as "Vietcong" and to a "DMZ" line in the office).  However, even if Mr. Evangelista made these comments, plaintiff has not shown by a preponderance of the evidence that defendants' reasons were pretext for acting with an illegal motive.[10]  In addition, I find no connection between the person who allegedly made the comments (Mr. Evangelista) and the individual who recommended non-renewal (Mr. Perez), nor any evidence of influence engendered by racial animus.  Cmp. Chavez v. City of Arvada, 88 F.3d 861 (10th Cir. 1996) (question of whether racial animus, retaliatory in nature, infected recommendation to supervisor); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997) (prejudices of an employee may be imputed to nondiscriminatory supervisor where relevant information is concealed and discriminatory motive influences the decision).

20.  Aside from considerable evidence which documents plaintiff's deficient job performance, I believe that a personality conflict may have existed between Dr. Thong and some members of the ABE department.  In his log, Mr. Perez refers to what he perceives as "antagonistic behavior" by plaintiff and office disarray.  For example, in the storage area which

---

[10] Even assuming that these comments were made, and without determining whether they are direct evidence of discrimination, plaintiff's claim would also fail under a mixed-motive analysis.  They do not support a finding that racial animus was a substantial or motivating factor in either plaintiff's non-renewal or termination.  See Thomas v. Denny's Inc., 1997 WL 202107 (10th Cir. Okla. 1997) (plaintiff is entitled to a mixed-motives instruction upon a proper evidentiary showing even if the defendant does not request one).

plaintiff occupied when he was not in class, "chicken bones have been found underneath a desk, half eaten food is found in envelopes inside of this desk, and student papers are piled in an unorganized manner." Ex. 11 at 3. Dr. Phillips also alluded to a possible personality difference in the December 8th meeting. Ex. 24 at 4.

21. The critical issue here is whether the adverse employment decision resulted because of plaintiff's national origin - - not his job performance, or even his personality. Animus not related to race or national origin, such as a personality conflict, is not evidence of improper discrimination. Aramburu v. The Boeing Co., 112 F.3d 1398, 1406 (10th Cir. 1997) (citing Sanchez v. Philip Morris, Inc., 992 F.2d 244, 247- 48 (10th Cir.1993) (stating that Title VII does not protect against adverse employment decisions made on such factors as favoritism or mistake)); cmp.Randle v. City of Aurora, 69 F.3d 441, 451 n.14 (10th Cir. 1995) (when true reason for employment decision is not a prohibited discriminatory reason, even if concealed, defendant is entitled to summary judgment although it was pretextual) and Rakovich v. Wade, 850 F.2d 1180, 1192-93 (7th Cir. 1987) (generic dislike is not retaliation).

22. Plaintiff has failed to meet his burden of showing that the justification given by defendants for non-renewal or termination was merely a pretext for discrimination. Because discrimination was not a motivating factor in these decisions, judgment should be entered for defendants and this case dismissed with prejudice.

23. Any finding of fact that is more appropriately a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is more appropriately a finding of fact shall be deemed a finding of fact.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE